IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-40649

_____

In The Matter Of: SUSAN NICHOLS HASTINGS;
     TOM MARSH HASTINGS,

                         Debtors.

-------------

DAN W LUFKIN,

                         Appellant,

v.

SUSAN NICHOLS HASTINGS; TOM MARSH HASTINGS,

                         Appellees.

_____

Appeal from the United States District Court
          for the Eastern District of Texas
                    (4:95-CV-23)
_____
                    July 23, 1998
Before KING, SMITH, and STEWART, Circuit Judges.

PER CURIAM:[*]

     Defendants-appellants Tom Marsh Hastings and Susan

Nichols Hastings filed a voluntary Chapter 7 bankruptcy petition.

In connection with the bankruptcy proceeding, the Hastings

claimed a homestead exemption as to certain real property under

Texas law.  Plaintiff-appellant Dan W. Lufkin filed an adversary

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

proceeding objecting to both the Chapter 7 bankruptcy discharge and the claimed homestead exemption.  The bankruptcy court entered an order denying the discharge and an order denying Lufkin's objection to the homestead exemption.  Lufkin appealed the order denying the objection to the homestead exemption to the district court.  The district court affirmed the bankruptcy court's order, and Lufkin now appeals the district court's judgment.  We affirm.

## I.    FACTS AND PROCEDURAL HISTORY

In August 1985, plaintiff-appellant Dan W. Lufkin loaned defendant-appellee Tom Marsh Hastings $75,000.  The transaction was evidenced by a promissory note.  On November 1, 1985, Lufkin loaned Hastings an additional $125,000, and this transaction was also evidenced by a promissory note.  On November 2, 1987, the two promissory notes memorializing the loans from Lufkin to Hastings were consolidated into a single promissory note in the amount of $241,356.16.  The November 1987 note was signed by both Tom Marsh Hastings and Susan Nichols Hastings (collectively Debtors).  When the November 1987 note matured in 1989, Lufkin and Debtors agreed to extend the maturity date on the note to the earlier of November 1, 1990 or the date on which Debtors sold a ranch that they owned known as the Blackjack Property.  Debtors contend, and Lufkin does not dispute, that the Blackjack Property constituted Debtors' homestead while they owned it.  Lufkin contends that, as a condition upon his extension of the due date on the November 1987 note, Debtors agreed to pay the note out of

2

the proceeds from the sale of the Blackjack Property. Debtors deny that they made any such agreement. Debtors did not sell the Blackjack Property by November 1, 1990, and the November 1987 note therefore matured on that date. Debtors did not pay their debt to Lufkin.

In 1992, Debtors sold the Blackjack Property in two parcels to two different buyers. On May 21, 1992, Debtors sold one parcel of the Blackjack Property to Gary and Shannon Barker for $182,500. Debtors claim that they received $7,900 from this sale and that the balance of the proceeds was used to pay closing costs and to pay lienholders on the Blackjack Property and judgment creditors of Debtors.

On November 23, 1992, Debtors sold the remainder of the Blackjack Property to Michael and Deborah Snetzer for $700,000. Pursuant to the terms of the sale, the Snetzers made a $375,000 down payment and executed a $325,000 real estate lien note (the Snetzer Note) to Debtors secured by that portion of the Blackjack Property that Debtors sold to the Snetzers. The Snetzer Note contained a five-year prohibition on prepayment. Debtors claim that they received $169,500 of the $375,000 down payment, with the remainder being used to pay liens, closing costs, and other costs associated with the sale of the property to the Snetzers.

On March 18, 1993, Lufkin filed suit in state court (the State Court Lawsuit) to enforce Debtors' obligation under the November 1987 promissory note. On May 5, 1993, Debtors filed a loan application with North Texas Savings & Loan Association

3

(North Texas), and, on June 4, 1993, they received a $150,000 construction loan commitment. Lufkin claims that Debtors misrepresented their financial status in the loan application. On June 8, 1993, more than six months after the sale of the Blackjack Property, Debtors borrowed $65,000 from North Texas to purchase a ranch in North Hemming (the North Hemming Property), which is the property as to which Debtors claim the disputed homestead exemption. That same date, Debtors purchased the North Hemming Property for $100,000, using the loan proceeds and approximately $35,000 of the cash that they received from the sale of the second parcel of the Blackjack Property to the Snetzers.

On July 29, 1993, Debtors waived their right to a prepayment penalty upon the refinancing of the Snetzer Note. On August 6, 1993, Debtors sold the Snetzer Note to S.T.M. Mortgage Company, and they received approximately $313,000 from the refinancing. Debtors paid the closing costs of the refinancing out of the proceeds from the sale of the note. They also purchased a $50,000 certificate of deposit which they pledged to North Texas as collateral for their construction loan. Debtors deposited the remaining $263,000 from the sale of the Snetzer Note in a construction account. Debtors used the $263,000 plus $120,000 from the down payment that the Snetzers had paid them for the Blackjack Property to build improvements on the North Hemming Property.

In September 1993, Lufkin filed a motion for summary judgment in the State Court Lawsuit, and the state district court granted him partial summary judgment at a hearing on October 28, 1993. A hearing on the remainder of the summary judgment issues was set for December 9, 1993. On December 8, 1993, Debtors turned over the $50,000 certificate of deposit to North Texas to pay down the construction loan. On December 9, 1993, approximately three hours before the scheduled summary judgment hearing in the State Court Lawsuit, Debtors filed their Chapter 7 bankruptcy petition.

In their bankruptcy schedules, Debtors asserted that the North Hemming Property was covered by the homestead exemption pursuant to Chapter 41 of the Texas Property Code. Lufkin and the bankruptcy trustee filed objections to this claimed exemption. Additionally, Lufkin filed an adversary proceeding objecting to Debtors' discharge under 11 U.S.C. § 727 on the ground that Debtors transferred substantially all of their assets prior to bankruptcy with the actual intent to hinder, delay, or defraud Lufkin. On November 16, 1994, the adversary complaint and the objections of Lufkin and the bankruptcy trustee to Debtors' homestead exemption were tried to the bankruptcy court.

The bankruptcy court concluded that Debtors had made transfers of property, including transfers of nonexempt property into the North Hemming Property, with the actual intent to hinder, delay, and defraud Lufkin. Specifically, the bankruptcy court determined that Debtors realized that they had no viable

5

defense in the State Court Lawsuit and that they accelerated the conversion of their assets after the state district court granted Lufkin partial summary judgment.  The bankruptcy court therefore denied Debtors' discharge pursuant to § 727.  However, the bankruptcy court denied the objections of Lufkin and the bankruptcy trustee regarding Debtors' claimed homestead exemption for the North Hemming Property.  Lufkin and the trustee timely appealed the bankruptcy court's denial of their objections to the district court, and the district court affirmed the order of the bankruptcy court denying the objections.

## II.    STANDARD OF REVIEW

We review findings of fact by the bankruptcy court under the clearly erroneous standard and review issues of law de novo. Henderson v. Belknap (In re Henderson), 18 F.3d 1305, 1307 (5th Cir. 1994); Haber Oil Co. v. Swinehart (In re Haber Oil Co.), 12 F.3d 426, 434 (5th Cir. 1994).

## III.    DISCUSSION

Lufkin contends that Debtors are not entitled under Texas law to claim a homestead exemption for the North Hemming Property because, as the bankruptcy court found, they obtained the property in an attempt to defraud him.  We disagree.

The homestead exemption provision of the Texas Constitution provides as follows:

> The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, . . . or for work and material used in constructing improvements thereon . . . .  No mortgage,

6

trust deed, or other lien on the homestead shall ever be valid, except for a debt described by this section . . . . A purchaser or lender for value without actual knowledge may conclusively rely on an affidavit that designates other property as the homestead of the affiant and that states that the property to be conveyed or encumbered is not the homestead of the affiant.

TEX. CONST. art. 16, § 50 (amended 1998). In interpreting and applying Texas's homestead exemption, this court has made the following observation:

Because homesteads are favorites of the law, we must give a liberal construction to the constitutional and statutory provisions that protect homestead exemptions. Indeed, we must uphold and enforce the Texas homestead laws even though in so doing we might unwittingly assist a dishonest debtor in wrongfully defeating his creditor.

Bradley v. Pacific Southwest Bank (In re Bradley), 960 F.2d 502, 507 (5th Cir. 1992) (citations and internal quotation marks omitted). We have further noted that "Texas' constitutional and statutory protection of the homestead is absolute. The intent of the debtor is irrelevant to the scope of his homestead exemption under Texas law." Smith v. Moody (In re Moody), 862 F.2d 1194, 1197-98 (5th Cir. 1989). Additionally, Texas courts have held that "[f]oreclosure of the homestead is permitted only in the instances specifically listed in the constitution." Boudreaux Civic Ass'n v. Cox, 882 S.W.2d 543, 547 (Tex. App.--Houston [1st Dist.] 1994, no writ).

Lufkin argues, however, that, under Texas law, equitable remedies will preclude a dishonest debtor from obtaining the benefit of the homestead exemption and that Texas courts would afford such remedies in this case. In support of this

7

contention, Lufkin relies upon two general classes of Texas cases. First, he cites a number of cases in which Texas courts have utilized equitable remedies to preclude a landowner from benefiting from the homestead exemption when the landowner uses wrongfully acquired nonexempt funds to acquire, improve, or pay down debt on a homestead. See Bransom v. Standard Hardware Inc., 874 S.W.2d 919, 928-29 (Tex. App.--Fort Worth 1994, writ denied) (upholding a constructive trust on the proceeds of the sale of a homestead where the homestead owner had used embezzled funds to pay down her mortgage on her homestead); Baucum v. Texam Oil Corp., 423 S.W.2d 434, 442 (Tex. Civ. App.--El Paso 1967, writ ref'd n.r.e.) (noting that holding homestead property in a constructive trust constitutes an appropriate remedy where the owner used fraudulently obtained funds to purchase it); Bush v. Gaffney, 84 S.W.2d 759, 762 (Tex. Civ. App.--San Antonio 1935, no writ) (denying a homestead exemption to the extent necessary to satisfy a constructive trust imposed in favor of an individual whom the homestead owner fraudulently induced to purchase land); First State Bank v. Zelesky, 262 S.W. 190, 192 (Tex. Civ. App.--Galveston 1924, no writ) (denying a homestead exemption where the property was acquired with embezzled funds); Smith v. Green, 243 S.W. 1006, 1008 (Tex. App.--Amarillo 1922, writ ref'd) (denying a homestead exemption to the extent necessary to satisfy a constructive trust in favor of the homestead owner's partner because the homestead owner built the homestead using partnership funds).

8

Second, Lufkin relies upon cases where this court and Texas courts have used equitable remedies in circumstances in which homestead owners misrepresent the homestead character of their homesteads and thereby induce third parties to lend them money secured by liens on the homestead.  See RepublicBank, Lubbock, N.A. v. Daves (In re Daves), 770 F.2d 1363, 1367 n.5 (5th Cir. 1985) (noting that a constructive trust may be imposed based upon "a misrepresentation or fraud related to a factual matter which would affect the creditor's knowledge or understanding of whether a particular property was properly claimed as homestead."); Goodrich v. Second Nat'l Bank, 151 S.W.2d 276, 279-80 (Tex. Civ. App.--Beaumont 1941, writ ref'd) (holding that, where the homestead owner caused a third party to create a lien on his homestead by hiding the homestead character of the property through a sham transaction, the homestead owner was estopped from asserting the homestead exemption as to the innocent purchaser of the note secured by the lien on his homestead).

The cases upon which Lufkin relies are entirely inapposite. First, as Debtors point out, they did not wrongfully obtain the funds used to purchase the North Hemming Property; rather, they purchased it with the proceeds from the sale of their prior homestead.[1]  Second, Lufkin makes no contention that Debtors

_____

[1]     We note that the proceeds from the sale of a Texas homestead retain their homestead character for six months after the sale.  See Tex. Prop. Code Ann. § 41.001(c) (Vernon Supp. 1998).  Thus, for the time period beginning six months after the sale of the Blackjack property and continuing until the Debtors reinvested the funds from the sale in a new homestead, the funds were subject to attachment to satisfy Lufkin's claim.

induced him to loan them money by misrepresenting the homestead character of the Blackjack Property, which was Debtors' homestead at the time that Lufkin made the loan giving rise to the debt at issue here.

Lufkin contends that Debtors purchased the North Hemming Property with fraudulently obtained funds to the extent that they acquired the property in part with funds obtained after submitting a fraudulent loan application to North Texas. This argument is unavailing. While Debtors' fraud in the loan application at most provides <u>North Texas</u> with a remedy against them (a matter we need not decide), it has absolutely no bearing on the validity of Debtors' homestead exemption as to Lufkin because Debtors did not fraudulently obtain the funds used to purchase or improve their homestead <u>from Lufkin</u>. Lufkin's further argument that Debtors would not have been able to shelter all of their assets in the North Hemming Property but for their fraud on North Texas is unpersuasive. First, it appears that Debtors could have paid for the North Hemming Property and the improvements thereon entirely out of the proceeds from the sale of the Blackjack Property. Second, even if this were not true, Debtors could have prejudiced Lufkin to the same extent by simply purchasing a less expensive homestead that nonetheless consumed all of the proceeds from the sale of the Blackjack Property. Any fraud perpetrated by Debtors on North Texas had no detrimental impact on Lufkin.

The factual scenario in this case is analogous to that addressed in <u>Driskill v. Reed (In re Reed)</u>, 12 B.R. 41 (Bankr. N.D. Tex. 1981).  In that case, the debtor used nonexempt assets to pay down the mortgage on his existing homestead and to pay off a home improvement loan that he had taken out to pay for improvements to his homestead.  <u>See</u> <u>id.</u> at 42.  The bankruptcy court determined that, while this action constituted a basis for denying the debtor's discharge in bankruptcy,[2] it did not provide a basis for concluding that the debtor forfeited his homestead exemption.  <u>See</u> <u>id.</u> at 43-44.[3]

The result in <u>Reed</u> is consistent with Texas's statutory and constitutional scheme regarding real and personal property exemptions.  Sections 42.001 and 42.002 of the Texas Property Code exempt certain personal property from garnishment, attachment, or execution by creditors.  <u>See</u> TEX. PROP. CODE ANN. §§ 42.001, 42.002 (Vernon Supp. 1998).  However, § 42.004 of the Property Code provides that,

> [i]f a person uses the property not exempt under this chapter to acquire, obtain an interest in, make improvement to, or pay an indebtedness on personal property which would be exempt under this chapter with

---

[2]  The bankruptcy court denied the debtors' discharge in another proceeding.  <u>See</u> <u>First Tex. Sav. Ass'n v. Reed (In re Reed)</u>, 11 B.R. 683 (Bankr. N.D. Tex. 1981), <u>aff'd</u> 700 F.2d 986 (5th Cir. 1983).

[3]  Lufkin attempts to distinguish <u>Reed</u> on the basis that, in that case, the debtor used nonexempt assets to pay down a mortgage on his existing homestead, whereas, in this case, Debtors used nonexempt assets to purchase a new homestead.  Given that the effect on the ability of creditors to satisfy their claims against the debtor in both scenarios is identical, this is a meaningless distinction.

> the intent to defraud, delay, or hinder an interested
> person from obtaining that to which the interested
> person is or may be entitled, the property, interest,
> or improvement acquired is not exempt from seizure for
> the satisfaction of liabilities.

Id. § 42.004. The Property Code contains no similar provision regarding the use of nonexempt property to acquire or improve the debtor's homestead. One can assume from this omission that the Texas legislature either did not desire to adopt such a provision or that it lacked the constitutional authority to do so in light of the broad homestead protections afforded by § 50 of article 16 of the Texas Constitution. In either event, no statutory, constitutional, or equitable authority exists for any conclusion in this case other than that the North Hemming Property is exempt from attachment to satisfy Lufkin's claim against Debtors.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court affirming the bankruptcy court's order denying Lufkin's objection to Debtors' claimed homestead exemption.

12